Jones, J,,
delivered the opinion of the Court.
This was an action of ejectment, brought by the defendant in error, in the Circuit Court of St. Louis, against the plaintiff, to recover possession of a lot of ground in the town of St. Louis, of 150 feet in length, by 120 feet in depth, on which the defendant, Vasseur, resided.
On the trial of this cause, a bilí of exceptions was filed by the therein defendant, to the opinion and instructions of the Court to the jury, who accordingly found a; verdict for the plaintiff; to reverse which judgment this writ of error was brought.
The bill of exceptions states, proof by the plaintiff of the following title, to wit: an abstract from the book of the recorder of land titles,, as to claims entered under the act of 13th June, 1812, and proven before 1st January, 1814, as provided by the act of 3d March, 1813, comprehending, also, the claims in the late district of-, which, by the act of 2d August, 1813, were permitted to be entered until 1st January, 1814, together with the extension of quantity, provided by the 4th section of the act of 3d March, 1813, and confirmations under the act of 12th April, 1814. From this abstract it appears that a claim was entered with the recorder, by the representatives of Antoine Rivierre, for 300 by 300 feet, in the town of St. Louis, by an improvement and possession for twenty-six years, and that that quantity was confirmed by the recorder, and was ordered to be surveyed according to possession.
That the plaintiff then proved that Antoine Rivierre fónperly lived in St. Lou is, somewhere on Second or Main street, and that, for about twenty-six years next preceding the date of the confirmation, he had and used a barn built on the S. W. quarter of the above mentioned square, being the quarter of the square or lot lying south and adjoining the one now sued for. The plaintiff then read in evidence a deed from Rivierre to Rufus Easton, dated July, 1815, by which deed Rivierre confessed and declares that he had verbally sold to Mrs. Charles Gratiot a lot of 300 feet square, more or less, whereon there was a barn, (situate in the rear- of a lot of one Jeffrey, and in rear of the third street, and northwest by the lot lately occupied by one Coons,) Which lot and barn he had occupied twenty-six years past, and which lot was sold by public sale to Pierre Chouteau, who sold to Charles Gratiot, who sold to Gregoire Sarpy, who conveyed it by a special deed to- Rufus Easton, and he, Rivierre, then conveys his right and interest in said lot to Easton.
To the reading of which deed in evidence, the defendant excepted, on the grounds {hat the recitals therein shewed a title out of Rivierre; and the Court overruled the objection, and the defendant exeepted to the opinion of the Court.
*213 The plaintiff thereupon deduced a title in himself, by several mesne conveyances to the lot in dispute, and then gave in evidence a plot of survey made by the county Surveyor, under the order of the Court, of the 300 feet above confirmed, including the S. W. quarter of the square of which Rivierre’s barn was, and also the lot or quarter of the square sued for. It was also proved, that this survey corresponded to a survey of the same ground, made by the same Surveyor, under the authority of the United States.
On the part of the defendant it was proved, that Rivierre never had possession of any part of the lot or quarter of the square in controversy, and that he was never known to claim this lot. It was also proved, that as early as the year 1780, the defendant, Vasseur, resided on the lot or quarter of the square lying east of the lot sued for, and that he had a barn and small inclosures on the lot or quarter of the square sued for, and claimed the two lots. That the defendant had constantly, since that time, had such barn and small inclosures on this lot; and that, at the time of commencing the suit, the defendant had the whole, excepting five or six feet across the western end of it,' actually inclosed; but it did not appear at what time the fence was extended so far to the west, though it was proved, that a part of the lot was actually inclosed, before and at the time of making each of the said deeds, read in evidence by the plaintiff. It was also proved by the Surveyor, that when ho made the surveys, the defendant was not present, and that no evidence was furnished him of Rivierre’s possession of any part of the land included in the surveys, but that he made the same entirely according to the directions of Mr. Easton, without inquiry or regard to the possession of Rivierre; and that Yasseur was, at the time, in the actual possession of the lot sued for; and thereupon, the defendant prayed the Court to instruct the jury,
First. That under the above confirmation, no land or ground could be surveyed, or was confirmed to Rivierre, which he had not actually possessed and improved, prior to 20th Dec., 1803.
Second. That the said confirmation did not confirm to Rivierre, and that under it, no land conld be surveyed for him, which, for 20 years prior to, and on the said 20th Dec., 1803, was in the adverse possession of Regis Vasseur.
Third. That the survey above mentioned, being made according to the directions of Easton, was no evidence that the land included therein, was the land confirmed to Rivierre.
Fourth. That if the defendant had had an adverse possession of the lot in question, for 30 years previous to 1st June, 1816, it gave him title thereto as against the plaintiff, and those under whom he claimed.
Fifth. That if defendant was hr adverse possession of the lot in question, or any part of it, at the time of the execution of all or any of the deeds under which the plaintiff claims such deed or deeds, passed not the title of the part so adversely possessed, and the plaintiff could not maintain possession for the same, under or by virtue of such deed or deeds.
All of which instructions the Court refused to give to the jury; but instructed them, that they should not regard any evidence of the primitivetitleto the premises hut a complete grant under the Spanish laws prior to the change of government; or such other title as should have been ascertained by one of the tribwnals appointed under the laws of the United States for that purpose, and recognized by such tribunals. That those tribunals were the sole judges of the facts, and of the rights resulting under the *214 Idws of Congress, from the facts m all cases of imperfect titles, subject only to the control of Congress. That confirmations, made by those tribunals in such cases, were to be taken in this Court to be rightly made. That it was for the jury to inquire of the identity of the land confirmed in this case, and that for this purpose they should look as well to the survey, and the circumstances under which it was made, as to the' circumstances in the case; and that if, on the whole matter, they found the confirmation to Rivierre, and a regular chain of conveyances from him to the plaintiff for the land confirmed; and if they should, moreover, find the premises to be parcel of the land confirmed, it would be their duty to find the title' of the premises for the plaintiff, notwithstanding they miglll have been for SO years before 1st Jume, 1816, or at any time since, m the actual psssedsion of the defendant. To which opinion the defendant excepted.
The errors assigned are foiinded on the bill of exceptions in general.
A decision on the correctness of the first part of the instructions to the jury, must depend on the true construction of the act of Congress, of 13th june, 1812. By the first section of this act, all rights, titles and claims, to town or village lots, &c., adjoining and belonging to the' several towns and villages therein named, (St. Louis being one of them,) which lots, &c., had been inhabited, cultivated, or possessed, prior to 20th December, 1803, were confirmed, (the words being, “ shall be, and the same are hereby confirmed,”) to the- inhabitants of the said respective towns or villages, according to their several rights in-common thereto. And by the second section, all the town or village lots, (included in the survey of the several towns, &c., which were thereby directed to be made,) which were not rightfully owned or (300) claimed by individuals, were reserved for the use? of sfchools, in the respective towns or villages.
According to the construction we give to this act, we aré of opinion, that the claims to town and village lots, which had been inhabited, cultivated, or possessed, prior to 20th December, 1803, are, by the express words thereof, (hereby confirmed,) ipso facto confirmed, as to the right of the United States, and which became thereby vested either in individuals, or reserved for the use of schools therein; that, therefore, the recorder of land titles, (whose powers extended- no further than to give and report to Congress his opinions on claims to land in which the United States were only interested,) had no authority to enter into an investigation of, or decide on the-titles of individuals to those town lots; and that any conflicting claims between them to any of these lots, ought to be decided in a due course of law, according to-their priority of possession, cultivation, or inhabitation.
A contrary construction would be predicated on the presumption, that Congress had the power, or at least that they meant, which we are far from believing, to institute a tribunal to judge of the private rights and claims of contending individuals y and it would, in effect, be saying, that he- had the right of judging of those claims, not only between private individuals, but also between them and the inhabitants at large,, of the respective towns', &e., to whom, for the use of schools, all lots, &c., not rightfully claimed, had been reserved and given.
All legislative acts are to be so construed as to endeavor, if possible, to- give full effect to every part of them. Talcing this rule for our guide, we- clearly infer, that Congress, by making use of the words, “ shall be, and the same are- hereby confirmed,” intended a full confirmation of the town and village lots, or they would not). *215 in the third and other sections of the same act, directing the confirmation by the recorder in certain cases of donation and other claims to land, have made use of the words shall be confirmed, in the future tense. Hence we conclude, that, as far as relates to donation and other claims to land, the recorder was vested with discretionary but limited powers to judge and give his opinion on the merits of the different claims, as between the United States and individuals, but that he had no . such authority as to the town and village lots, they having, by the former part of the act, been confirmed.
The instructions prayed for, “ that the confirmation by the recorder to Rivierre did not confirm to him,” ought, in our opinion, to have been given. The confirmation given in evidence, and which the Court below admitted conclusive as to the title under it, vested, in our opinion, no better or other title in Rivierre, or those claiming under him, than they had previously to such confirmation. Priority of possession has a priority of right, against all claiming by possession only.
The evidence given to the Recorder, must, we presume, have been fuller than that given on the trial of the cause, or he would not have confirmed a town lot of 300 feet square, for such an improvement as that of erecting a bam on part of a town square, unoccupied by habitation or inclusure, as far as appears by the hill of exceptions, the act of Congress of 3d March, 1813, pg»jj<ljaj¡|gi5fcrt no grant should he made by him for more land than was contajjjeSVn^r^fK^npíí^lged and ascertained boundaries of the tract claimed.
The judgment of the Circuit Court is'